## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

EDWARD PISTORIO, individually and
on behalf of all others similarly situated,

Plaintiff,

- against -

MARS  WRIGLEY  CONFECTIONERY
US LLC,

Defendant

Class Action Complaint

Jury Trial Demanded

Plaintiff Edward Pistorio ("Plaintiff") alleges upon information and belief,

except for allegations about Plaintiff, which are based on personal knowledge:

1.     Consumers are increasingly seeking healthier choices across the foods

they buy, including meats, dairy, breads and snacks.

2.     The result is increased attention to a food's ingredients.

3.     According to a food industry executive, "Consumers are reading product

labels more closely, and we are seeing the effects of a simple food movement when

it comes to ingredients," especially in snack foods.

4.     Consumer research company Mintel attributed this demand for "real

ingredients" in part due to media attention focused on lack of transparency in the

food industry.[1]

5.    This is because shoppers want to consume foods with the types of ingredients they have in their refrigerators and pantries, instead of highly processed and synthetic substitutes.

6.    Shoppers are seeking "healthy indulgences," or "treat[s] with all the flavor and taste desired, without the guilt of eating something 'bad' for you," due to the presence of ingredients associated with positive health benefits.

7.    One of these ingredients is cheese.

8.    Industry data confirms the increased popularity of cheese, with price and per capita consumption rising over the past decade relative to other foods, reaching an all-time high of 50 lbs.

9.    Multiple reasons explain the surge in popularity for cheese.

10.   First, consumer demand for cheese is consistent with growing preferences for natural foods, made without chemicals or harsh processing.

11.   Cheese's definition, as "the coagulated, compressed, and usually ripened curd of milk separated from the whey," fits this bill.[2]

12.   Second, more than half the public consider cheese "healthy" and "nutritious," because it is high in protein and nutrients, with key vitamins and

---

[1] Lynn Dornblaser, Director, Innovation & Insight, Mintel, "Clean Label: Why this Trend is Important Now," 2017.
[2] Merriam-Webster definition.

minerals like calcium.

13.   That this factor was important to consumers was observed by a marketing executive, noting how "Dairy, in its many forms, is increasingly seen as an inherently healthy simple food."

14.   Third, cheese is highly versatile, leading to its usage in a growing number of prepared and packaged snack applications, instead of only consumed in cubes, slices, or sticks.

15.   Fourth, according to one food industry publication, marketers recognize that "made with real cheese" adds value to snacks consumers may have written off years ago as full of artificial and highly processed ingredients.

16.   This is because cheese "has indulgent properties for consumers who want to 'treat themselves,'" in addition to its reputation as nutritious.[3]

17.   The preference for wholesome ingredients like cheese instead of highly processed, synthetic alternatives is not new.

18.   In response to an unregulated environment where companies substituted cheese by-products and orange-colored blends of vegetable fats for the real cheese prominently advertised, the Pure Food and Drug Act of 1906 sought to protect consumers from such deception.

19.   These requirements were strengthened when Congress adopted the

---

[3] https://www.freedoniagroup.com/blog/3-top-trends-impacting-cheese-sales

Federal Food, Drug and Cosmetic Act ("FFDCA") in 1938. 21 U.S.C. § 301 *et seq*.

20.  Florida adopted these laws through the Food Safety Act ("FSA") and accompanying regulations. Fla. Stat. § 500.01 *et seq*.; Fla. Stat. § 500.02(2) ("Provide legislation which shall be uniform, as provided in this chapter, and administered so far as practicable in conformity with the provisions of, and regulations issued under the authority of, the [FFDCA]."); FL Admin Code § 5K-4.002(1)(d) (adopting 21 C.F.R. Parts 101 and 102).

21.  The newly established Food and Drug Administration ("FDA") was aware of how companies used advanced scientific knowledge to substitute lower cost and lower quality ingredients in place of nutrient-dense and natural ingredients valued by consumers.

22.  Federal and state laws were enacted to prevent "misbranding," an anachronistic term used to denote labeling practices which were misleading to consumers. 21 U.S.C. § 343; Fla. Stat. § 500.11.

23.  Even where conduct did not cross a "bright line" rule, these laws' "catchall" provision covered circumstances where "labeling is false or misleading in any particular." 21 U.S.C. § 343(a); Fla. Stat. § 500.11(1)(a).

24.  Based on research showing that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging" thereby "develop[ing] sensory [and other] expectations" about its ingredients, companies are increasingly

promoting their products with claims like "made with real cheese."[4]

25.    Recognizing   this   trend,   Mars   Wrigley   Confectionery   US   LLC ("Defendant") markets Cheddar Cheese Stuffed Snacks, pretzel tubes described as having a "Filling made with REAL CHEESE," above a freshly shredded block of bright orange cheddar cheese ("Product" or "Combos").

 

---

[4] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Product Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326.



26.   Beneath the statement of "Baked Pretzel" is the stray, disconnected of "Natural Flavor," not even visible to consumers buying the smaller 1.8 oz packages, because of how its weight causes it to sink down, obscuring it.

27.   Despite the promotion of having a "Filling Made With Real Cheese," "Cheddar Cheese," and block of freshly grated cheddar cheese, the fine print of the ingredients on the back of the package reveal that the filling is predominantly lower quality, non-cheese ingredients, confirmed by the second and third ingredients of "PALM OIL [and] DAIRY PRODUCTS SOLIDS."  21 C.F.R. § 101.4(a)(1).

**INGREDIENTS:** WHEAT FLOUR, PALM OIL, DAIRY PRODUCT SOLIDS, MALTODEXTRIN, MODIFIED CORN STARCH; LESS THAN 2% OF: SALT, CHEESE BLEND (BAKERS, CHEDDAR, PARMESAN AND ROMANO [MILK, CHEESE CULTURES, SALT, ENZYMES, ANNATTO]), LEAVENING (BAKING SODA, SODIUM ACID PYROPHOSPHATE), DEXTROSE, SOY LECITHIN, YEAST EXTRACT, SKIM MILK, HYDROLYZED WHEAT GLUTEN, NATURAL FLAVOR, COLORS (YELLOW 5 LAKE, YELLOW 6 LAKE, BLUE 1 LAKE), LACTIC ACID, CITRÍC ACID, LACTOSE, SODIUM CASEINATE, WHEY.

28.   The amount of "REAL CHEESE" in the filling is "LESS THAN 2%" and consists of a blend of "BAKERS, CHEDDAR, PARMESAN AND ROMANO [CHEESES]."

29.   Instead of the "real cheese" and "cheddar cheese" promised on the label, the Product uses vegetable fats and cheese byproducts.

30.   The main filling ingredient is palm oil, a highly processed vegetable oil.

31.   Palm oil is not a natural ingredient like real cheese, because it is subjected to hydrogenation and/or interesterification with the use of chemical catalysts to turn it into a solid form.

32.   Palm oil contains harmful trans fats and no protein, unlike real cheese, which contains one-quarter protein, healthy fats and essential vitamins and minerals.

33.   Palm oil lacks the savory taste of cheese due to the intense processing required to make it palatable.

34.   "Dairy Products Solids," the third most predominant ingredient, is another name for the ingredient known as whey permeate.[5]

35.   Whey permeate is not a component of any "real cheese," because it "is the by-product of the by-product in cheese manufacturing."

36.   After "real cheese" is made, the remaining whey is predominantly lactose and protein not retained in the cheese.

37.   Cheese manufacturers then separate out the protein and other remaining solids by physical separation techniques such as precipitation, filtration or dialysis.

38.   The resulting whey permeate consists mainly of lactose, the sugary component of milk.

39.   Dairy product solids are promoted by the dairy industry as a lower cost, filler ingredient and bulking agent, which adds volume, compared to costlier and higher quality real cheese.

40.   Dairy product solids are touted as not just an alternative for the higher valued cheese ingredients but even for other higher value cheese substitutes such as

---

[5] American Dairy Products Institute ("ADPI"),  Dairy Permeate Standard.

whey powder.

41.   Dairy product solids lack the nutritional value of real cheese in terms of proteins, healthy fats and other vitamins and minerals.

42.   Dairy product solids lack the savory taste of real cheese because they lack the components of real cheese.

43.   Even the most predominant component of the "Cheese Blend," "Bakers [Cheese]," is arguably not a "real cheese," as consumers understand this term.

44.   Bakers' cheese is not subject to an FDA standard of identity, which sets limits on its ingredients, to ensure quality.

45.   Bakers' cheese is a form of cream cheese or "Neufchatel cheese," a type of French cheese.

46.   According to leading dairy treatises, "Bakers' cheese is produced in the US and widely used in the bakery and confectionary trades; hence its name. It is made from skim milk and has a soft, dry, grainy, pliable curd."

47.   In other words, even the most predominant component of the less than two percent cheese blend, bakers' cheese, is not what consumers would expect from real cheese, especially considering the fresh block of cheddar cheese and cheddar cheese shreds on the front label.

**I.   "FILLING MADE WITH REAL CHEESE" MISLEADS CONSUMERS**

48.   In considering whether a food's label is misleading, it is required to

"take[] into account, among other things, not only representations made or suggested by statement, word, design, [] or in any combination thereof, but also the extent to which the labeling or advertisement fails to prominently and conspicuously reveal facts relative to the proportions or absence of certain ingredients or other facts concerning ingredients in the food, which facts are of material interest to consumers." Fla. Stat. § 500.03(2)(b).

49.  The replacement of cheese ingredients with palm oil and dairy product solids is "of material interest to consumers," because cheese costs more than these processed and synthetic alternatives. Fla. Stat. § 500.03(2)(b).

50.  The promotion of the Product as having a "Filling Made With REAL CHEESE" not only does not prominently or conspicuously disclose it contains less than two percent of cheese but that it substitutes lower quality, processed alternatives for real cheese.

51.  By replacing real cheese with palm oil and dairy product solids, the filling lacks the quality, nutritional, and savory attributes that consumers expect from a label indicating a "Filling Made with Real Cheese."

52.  The Product's labeling, that it contains a "Filling Made with Real Cheese," above a block of freshly shredded cheddar cheese, even though the amount of real cheese is de minimis or negligible, causes it to be "misbranded," and mislead consumers about the amount and proportion of real cheese ingredients in the filling.

21 U.S.C. § 343(a); Fla. Stat. § 500.11(1)(a).

## II.   CONCLUSION

53.   By substituting palm oil and dairy product solids, and even bakers'
cheese, purchasers are misled based on the label claim that it has a "filling made
with real cheese."

54.   The Product could have included more real cheese ingredients like
cheddar cheese but used synthetic and/or highly processed by-products such as palm
oil and dairy product solids, and even the unknown ingredient of bakers' cheese,
because they cost less than real cheese.

55.   Marketing the Product with a "Filling Made With Real Cheese" is
misleading to consumers because the filling is almost entirely lower quality, non-
cheese ingredients that consumers are seeking to avoid when buying a product
promoted as "Made With Real Cheese."

56.   Reasonable consumers viewing the label which states, "Cheddar
Cheese," "Stuffed Snacks," "Filling Made With Real Cheese," and picture of a block
of freshly shredded cheddar cheese, will expect the filling to consist entirely or
predominantly of real cheese and/or real cheddar cheese.

57.   Instead, the Product's filling is almost entirely made from lower quality
cheese substitutes, from palm oil and dairy product solids, and even the unknown
ingredient of bakers' cheese,

58.   By adding synthetic and/or highly processed by-products such as palm oil and dairy product solids, and even the unknown ingredient of bakers' cheese, purchasers get a smaller amount of real cheese ingredients than what is promised or implied by the front label.

59.   As a result of the false and misleading representations and omissions, the Product is sold at a premium price, $2.59 for 6.3 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION

60.   Plaintiff is a citizen of Florida.

61.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

62.   The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

63.   Plaintiff is a citizen of Florida.

64.   Defendant is a citizen of Delaware and Virginia based on the citizenship of its member, Mars, Incorporated.

65.   The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

66.   The members of the proposed class Plaintiff seeks to represent are more

than one hundred, because the Product has been sold at hundreds of retail stores in this State, such as grocery stores, big box stores, warehouse club stores, drug stores, convenience stores, and online to citizens of this State.

67.   The Court has jurisdiction over Defendant because it transacts business within Florida and sells the Product to consumers within Florida from hundreds of retail stores in this State and online to citizens of this State.

68.   Defendant transacts business in Florida, through the sale of the Product to citizens of Florida from hundreds of retail stores in this State and online to citizens of this State.

69.   Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

70.   Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

71.   Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, through causing the

Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

72.   The Court has jurisdiction over Defendant because it transacts business within Florida and sells the Product to consumers within Florida from hundreds of retail stores in this State and online to citizens of this State.

73.   The Court has jurisdiction over Defendant because it has committed tortious acts within this State through the labeling, distribution and/or sale of the Product, which is misleading to consumers in this State.

74.   The Court has jurisdiction over Defendant because it has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, attributes, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

75.   Plaintiff resides in Lee County.

76.   Venue in the Fort Myers Division of this District is based on Plaintiff's residence in Lee County.

77.   Venue is based on Plaintiff's residence in Lee County because a substantial or the entire part of the events or omissions giving rise to his claims occurred in Lee County, including his purchase of the Product based on the representations and omissions identified here.

78.   Venue is based on Plaintiff's residence in Lee County because this is where his causes of action accrued, including his purchase, payment of money for or towards, use and/or consumption of the Product.

79.   Plaintiff purchased, paid money for or towards, used and/or consumed the Product in reliance on the representations and omissions identified here in Lee County.

80.   Plaintiff first became aware the representations and omissions were false and misleading in Lee County.

**PARTIES**

81.   Plaintiff Edward Pistorio is a citizen of Lee County, Florida.

82.   Defendant Mars Wrigley Confectionery US LLC is a Delaware limited liability company with a principal place of business in New Jersey.

83.   The sole member of Defendant is Mars, Incorporated, a Delaware corporation with a principal place of business in Virginia.

84.   Plaintiff is like most consumers and seeks foods promoted as containing ingredients known to have health benefits.

85.   Plaintiff is like most consumers and values the nutrients provided by real cheese.

86.   Plaintiff is like most consumers and seeks foods promoted as containing the types of ingredients they are likely to have in their homes, like real cheese.

87.   Plaintiff is like most consumers and values the taste provided by real cheese.

88.   Plaintiff is like most consumers and looks to the front label of foods to see what he is buying and to learn basic information about them.

89.   Plaintiff is like most consumers and is accustomed to the front label of packaging telling them if what they are buying contains an appreciable amount of the highlighted ingredients.

90.   Plaintiff is like most consumers and when he sees that a front label tells him a product is "made with" specific ingredients, he will expect it contains more than a de minimis or negligible amount of such ingredients instead of mainly lower quality substitutes for such highlighted ingredients.

91.   Plaintiff is like most consumers and when he saw the Product's front label telling him it had a "Filling Made With Real Cheese," he believed this, and expected the filling was predominantly or exclusively real cheese.

16

92.   Plaintiff did not expect the filling to be mainly non-cheese ingredients, like palm oil and dairy product solids.

93.   Plaintiff did not expect that the main cheese ingredient, which was less than two percent, was an ingredient called "bakers' cheese," a cheese he was not familiar with.

94.   Plaintiff read, saw and relied on the label's statements of "Filling Made with Real Cheese" with pictures of a block of bright orange cheddar cheese and cheddar cheese shreds, to expect its filling was exclusively or predominantly real cheese.

95.   Plaintiff did not expect the Product contained a greater amount of non-cheese filling than real cheese filling.

96.   Plaintiff did not expect that the Product would use palm oil, dairy product solids and bakers' cheese in place of adding more real cheese, including the cheddar cheese highlighted on the label.

97.   Plaintiff purchased the Combos Cheddar Cheese Baked Pretzel Stuffed Snacks described as having a "filling made with real cheese," with pictures of a block of bright orange cheddar cheese and cheddar cheese shreds, the labeling identified here, at grocery stores, drug stores, gas stations, pharmacies, big box stores, warehouse club stores, and/or convenience stores, in Lee County, between December 2019 and December 2023.

98. Plaintiff bought the Product at, around or exceeding the above-referenced price.

99. Plaintiff paid more for the Product than he would have had he known its filling contained a de minimis or negligible amount of real cheese, as he would have paid less or not purchased it.

100. The Product was worth less than what Plaintiff paid, and he would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

101. Plaintiff seeks to represent the following class:

> All persons in Florida who purchased Combos Cheddar Cheese Baked Pretzel Stuffed Snacks represented as having a "filling made with real cheese," in Florida during the statutes of limitations for each cause of action alleged.

102. Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons, (b) governmental entities, (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

103. Common questions of issues, law, and fact predominate and include whether Defendant's representations and omissions were and are misleading and if

Plaintiff and class members are entitled to damages.

104. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

105. Plaintiff is an adequate representative because his interests do not conflict with other members.

106. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

107. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

108. The class is sufficiently numerous and likely includes several thousand people.

109. This is because Defendant sells the Product to consumers from hundreds of its stores in the State Plaintiff is seeking to represent.

110. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"),
Fla. Stat. § 501.201, *et seq.*

111. Plaintiff incorporates by reference paragraphs 1-83.

112. The purpose of FDUTPA is "To protect the consuming public…from those who engage in…deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

113. This includes "making state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection." Fla. Stat. § 501.202(3).

114. FDUTPA considers any "unfair or deceptive acts or practices in the conduct of any trade or commerce [to be] unlawful." Fla. Stat. § 501.204(1).

115. Such "unfair or deceptive acts or practices" must be construed so that "due consideration and great weight shall be given to the interpretations of the FTC and the federal courts relating to [the FTC Act,] 15 U.S.C. § 45(a)(1)." Fla. Stat. § 501.204(2).

116. Violations of FDUTPA can be based on other laws and standards related to consumer deception. Fla. Stat. § 501.203(3).

117. An FDUTPA violation occurs whenever "Any rules promulgated pursuant to the FTC Act, 15 U.S.C. § 41 *et seq*." are violated. Fla. Stat. § 501.203(3)(a).

118. An FDUTPA violation occurs whenever "The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission ('FTC') or the federal courts" relating to the FTC Act are violated. Fla. Stat. § 501.203(3)(b).

119. An FDUTPA violation occurs whenever "Any law, statute, rule, regulation, or ordinance which proscribes…unfair, deceptive, or unconscionable acts or practices" is violated. Fla. Stat. § 501.203(3)(c).

120. In considering whether advertising is misleading in a material respect, the FTC Act recognizes that the effect of advertising includes not just representations made or suggested by words and images, "but also the extent to which [it] fails to reveal facts material in the light of such representations." 15 U.S.C. § 55(a)(1).

121. In considering whether a food's label is misleading, it is required to "take[] into account, among other things, not only representations made or suggested by statement, word, design, [] or in any combination thereof, but also the extent to which the labeling or advertisement fails to prominently and conspicuously reveal facts relative to the proportions or absence of certain ingredients or other facts concerning ingredients in the food, which facts are of material interest to consumers." Fla. Stat. § 500.03(2)(b).

122. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

123. This is because consumers prefer food with ingredients which are natural, minimally processed and nutritious instead of ingredients which are highly processed, synthetic, byproducts and/or lower quality.

124. The labeling of the Product violated the FTC Act and thereby violated

FDUTPA because the representations and omissions of "Filling Made With Real Cheese" above a block of freshly shredded cheddar cheese created the erroneous impression its filling's main component was real cheese, when this was false, because it was mainly from synthetic and highly processed ingredients and by-products, like palm oil and dairy product solids and the unknown ingredient of "bakers' cheese." Fla. Stat. § 501.203(3)(a).

125. The labeling of the Product violates laws, statutes, rules and regulations "which proscribe[]…unfair, deceptive, or unconscionable acts or practices," thereby violating FDUTPA. Fla. Stat. § 501.203(3)(c).

126. The labeling of the Product violated FDUTPA because the representations and omissions that it contained a "Filling Made With Real Cheese" above a block of freshly shredded cheddar cheese, when it contained mainly synthetic and highly processed ingredients and by-products, like palm oil and dairy product solids and the unknown ingredient of "bakers' cheese," was unfair and deceptive to consumers. Fla. Stat. § 501.204(1).

127. The labeling of the Product violated FDUTPA because the representations and omissions it contained a "Filling Made With Real Cheese" above a block of freshly shredded cheddar cheese, when it contained mainly synthetic and highly processed ingredients and by-products, like palm oil and dairy product solids and the unknown ingredient of "bakers' cheese," was contrary to the Food Safety

Act, which adopted the FFDCA and accompanying regulations.

128. The labeling of the Product violated FDUTPA because the representations and omissions it contained a "Filling Made With Real Cheese" above a block of freshly shredded cheddar cheese, when it contained mainly synthetic and highly processed ingredients and by-products, like palm oil and dairy product solids and the unknown ingredient of "bakers' cheese," causes the Product to be "misbranded" because the labeling is false or misleading in any particular. 21 U.S.C. § 343(a)(1) Fla. Stat. § 500.11(1)(a)

129. The FFDCA and its regulations prohibit consumer deception by companies in the labeling of food. Fla. Stat. § 501.203(3)(c).

130. These include the following federal and state laws and regulations described above.

| Federal | State |
| --- | --- |
| 21 U.S.C. § 343(a)(1) | Fla. Stat. § 500.11(1)(a) |

131. Plaintiff believed the Product's filling was predominantly or exclusively real cheese, even though it was from mainly synthetic and highly processed ingredients and by-products, like palm oil and dairy product solids and the unknown ingredient of "bakers' cheese."

132. Plaintiff paid more for the Product and would not have paid as much if he knew that its filling was not predominantly or exclusively real cheese, but from

mainly synthetic and highly processed ingredients and by-products, like palm oil and dairy product solids and the unknown ingredient of "bakers' cheese."

133. Plaintiff seeks to recover for economic injury and/or loss he sustained based on the misleading labeling and packaging of the Product, a deceptive practice under FDUTPA, by paying more for it than he otherwise would have.

134. Plaintiff will produce evidence showing how he and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis and other advanced methodologies.

## COUNT II
### False and Misleading Adverting,
### Fla. Stat. § 817.41

135. Plaintiff incorporates by reference paragraphs 1-77.

136. Defendant made misrepresentations and omissions of material fact, that the Product's filling was predominantly or exclusively real cheese, even though it was from mainly synthetic and highly processed ingredients and by-products, like palm oil and dairy product solids and the unknown ingredient of "bakers' cheese," through its advertisements and marketing in various forms of media, product packaging and descriptions, and/or targeted digital advertising.

137. Defendant failed to truthfully disclose that the Product's filling contained a de minimis or negligible amount of real cheese, which it was required to do because

24

it highlighted the filling as containing real cheese.

138.  Defendant falsely and/or deceptively stated and/or implied the Product's filling was predominantly or exclusively real cheese, even though it was from mainly synthetic and highly processed ingredients and by-products, like palm oil and dairy product solids and the unknown ingredient of "bakers' cheese,"

139. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

140. Defendant knew these statements and omissions were false and/or misleading.

141. Defendant intended for consumers to rely on its false statements and omissions for the purpose of selling the Product.

142. Plaintiff and class members did in fact rely upon these statements and omissions.

143. Reliance was reasonable and justified because of the public trust placed in foods sold under the Combos brand, who expect them to be labeled accurately and in a non-misleading manner.

144. Plaintiff paid more for the Product, as he would not have paid as much or bought it if he knew that its filling was predominantly or exclusively real cheese, even though it was from mainly synthetic and highly processed ingredients and by-products, like palm oil and dairy product solids and the unknown ingredient of

"bakers' cheese."

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   January 26, 2024

Respectfully submitted,

/s/ William Wright
The Wright Law Office P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

William Wright

The Wright Law Office P.A.

*Counsel for Plaintiff*